IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRIS WALLACE                          )
1120 Connecticut Avenue, NW            )
Suite 500                              )
Washington, DC 20036                   )
                                       )
                                       )
                                       )
              Plaintiff,               )        Civil Action No.: 1:25-cv-3776 BAH
                                       )
              v.                       )        Jury Trial Demand
                                       )
JOHN RATCLIFFE,                        )
in his official capacity as Director,  )
Central Intelligence Agency,           )
Washington, D.C. 20505                 )
                                       )
              Defendant.               )
                                       )

## COMPLAINT

Comes now Plaintiff Chris Wallace ("'Plaintiff Wallace" or "Plaintiff"), by and through

undersigned counsel, and hereby files this Complaint against Defendant John Ratcliffe, in his

official capacity as Director of the Central Intelligence Agency ("CIA" or "Defendant"), pursuant

to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, seeking declaratory, injunctive,

and other equitable relief, compensatory damages, and attorneys' fees based on Defendant's

unlawful employment discrimination and retaliation against Plaintiff.:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-16(c) and

28 U.S.C. § 1331, as this action arises under the laws of the United States prohibiting employment

discrimination by federal agencies.

2.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the events

giving rise to this Complaint occurred within the District of Columbia, and Defendant's

**RECEIVED**

JUN 17 2026



Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

principal office is located here.

## PARTIES

3.    Plaintiff Chris Wallace is an African American man employed by the Central Intelligence Agency in its Human Resources division.

4.    Defendant John Ratcliffe is the Director of the Central Intelligence Agency, a federal executive agency headquartered in Washington, D.C. The CIA is an employer within the meaning of Title VII. Defendant is sued in his official capacity only.

## FACTS

5.    Plaintiff Chris Wallace is an African American male who served as a Human Resources Officer ("HRO") with the Central Intelligence Agency. His duties included providing comprehensive HR support to Agency personnel, managing staffing actions, advising leadership on personnel policies, and ensuring compliance with federal employment regulations.

6.    Throughout his tenure, Plaintiff excelled in his position. He received positive feedback on his performance, earned promotions and was regarded by his supervisors as an effective and experienced HR professional.

7.    In 2019, Plaintiff was placed on an assignment in a country in Asia and his first-level supervisor was Antoine S., an African American male, who provided guidance and mentorship. His second-level supervisor was Scott M., a white male known for engaging in racially insensitive and discriminatory behavior toward minority employees.

8.    When Antoine S. concluded his assignment, the position became vacant. Confident in his qualifications and record of strong perfomlance, Plaintiff applied for the GS-13 Human Resources Officer ("HRO:2") position. The vacancy announcement, issued on February 12, 2020, required two recent Performance Substantive Reports (PSRs) and a written qualification statement

2

addressing twelve (12) required and three (3) desired qualifications. Among the requirements were experience providing HR support, knowledge of HR functions, and discretion when handling sensitive personnel issues.

9.    At the time of his application, Plaintiff had not yet received his 2019 PSR due to agency delay. He submitted one PSR covering January 16, 2018, through July 31, 2018, and promptly provided the 2019 PSR once it became available. The vacancy announcement permitted applicants to submit missing PSRs later if unavailable at the time of application, and Plaintiff complied fully.

10.    Antoine S. was originally selected to serve on the first panel evaluating applicants for the position. Before the second panel convened, Antoine was removed and replaced with Scott M. The panel, chaired by Peggy W., also included members Adrienne J. (Outside Career Service Representative), S.S. (Minority Representative), and Stephanie T. (HR Advisor).

11.    Peggy W.'s introductory message to the panel on July 14, 2020, included an HR qualifications matrix and a spreadsheet summarizing the required qualifications. Scott M. deviated from instructions by creating "Tier 1" and "Tier 2" candidate lists rather than ranking applicants. Plaintiff was placed on the "Tier 1" list, which included five names and did not identify any top candidate.

12.    The panel did not use the provided matrix to score candidates. Scott M. failed to submit his matrix altogether. Agency policy required that if a panel member failed to follow procedure, the panel should remain open or replace the member, but the panel nonetheless proceeded.

13.    In the selection memorandum, the panel ranked the candidates as follows: Alaina P. (selectee), Hugo A. (first alternate), Nicole L. (second alternate), and Stephanie A. (third

alternate). The memorandum claimed that Plaintiff did not submit PSR documentation for his current assignment and lacked experience with "Special Issues" cases. It also asserted that compared to other applicants, Plaintiffs package did not fully demonstrate his capability as an HRO in the field.

14.    Plaintiff disagreed with these conclusions. His qualification statement addressed the ability to exercise discretion in sensitive personnel matters-one of the core requirements-and his supervisors had consistently documented his success handling such issues. Peggy W. and Adrienne J. later admitted that they considered Plaintiff overqualified and discussed his application outside official channels. Panelist S.S. stated that Plaintiff lacked large mission center HR experience, and Adrienne J. claimed she was concerned about his tenure in one location. These comments did not align with the vacancy criteria or with Plaintiffs strong record.

15.    Despite these irregularities, Peggy W. accepted the recommendations of Adrienne J. and S.S. and selected Alaina P. for the position. When Alaina later accepted another assignment, Hugo A., a non-Black candidate, was offered and accepted the job.

16.    The Office of Personnel Resources determined that Alaina P. had been unqualified for the GS-13 role and reassigned her to a lower-graded position, confirming that the selection process had been flawed. Peggy W. left her position soon after, yet the Agency had cited Antoine S.'s reassignment as the reason for excluding him from the panel. The inconsistent application of that rationale suggested intentional manipulation of the process.

17.    Plaintiff was already performing the same duties as the seleetee and had extensive HR experience across multiple missions. Nevertheless, management allowed Scott M.-who had a documented history of discrimination-to serve on the panel, in violation of Agency Regulation █████████, which required officers with known bias to recuse themselves.

4

18. In December 2020, the Agency formally admonished Scott M. for his treatment of minority employees, issuing him a Short-of-Tour (SoT) and canceling a planned retirement ceremony after notification from the Diversity and Inclusion Office. Despite its awareness of Scott M.'s discriminatory behavior, the Agency had permitted him to serve on Plaintiffs selection panel.

19. Around June 2020, Scott M. made racially charged remarks, stating that Plaintiff and his wife "were not at work after the George Floyd murder" and telling others he "did not believe that Plaintiff was a good HR officer." These comments reflected ongoing racial animus that infected the evaluation process.

20. On September 24, 2020, Plaintiff contacted the Agency's Office of Equal Employment Opportunity (OEEO) for advice and filed a grievance alleging that the selection panel had failed to apply consistent measures under ███████ AGENCY REGULATION. He believed his non-selection resulted from bias among one or more panel members. That same day, Scott M. expressed dissatisfaction with the panel's outcome, telling others that Plaintiff had been his "number one candidate."

21. On October I, 2020, Plaintiff entered the EEO pre-complaint process. Just four days later, Scott M. emailed colleagues proposing to bring in temporary HR support for the summer of 2021 rather than allowing Plaintiff to serve as Acting Chief of HR, a role normally offered to senior HR officers. The proposal effectively denied Plaintiff the opportunity to assume the acting role.

22. This decision came immediately after Plaintiffs protected EEO and grievance activity. Scott M.'s previous performance reviews had praised Plaintiffs work, but following the grievance, his comments became negative and disparaging. Witnesses, including Amanda, Lynette, and Antoine S., confirmed that Scott M. denied Plaintiff acting opportunities and began criticizing him after his filings.

23.     Plaintiff later served as Acting Chief of **HR** only after the temporary appointee's departure, confirming that management's earlier refusal had been retaliatory.

24.     During the administrative process, additional evidence revealed that panel members misled the grievance officer, falsely claiming that all discussions occurred via email. Deposition testimony later established that Peggy W. and Adrienne J. had off-record conversations in which they agreed Plaintiff was overqualified.

25.     Following the internal proceedings, Plaintiff filed a formal EEO complaint alleging discrimination based on race and retaliation for engaging in protected activity. The Equal Employment Opportunity Commission's Washington Field Office later issued a decision without a hearing, granting summary judgment for the Agency. Plaintiff appealed to the Office of Federal Operations, which affirmed the Agency's final order. Having exhausted his administrative remedies, Plaintiff now brings this civil action.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964,
### 42 U.S.C. § 2000e-16
### (Race and color discrimination: Non-Selection)

26.     Plaintiff adopts and incorporates by reference all preceding paragraphs as though fully stated herein.

27.     At all relevant times, Plaintiff was an African American employee of the Central Intelligence Agency and a member of a protected class based on race and color.

28.     In February 2020, Plaintiff applied for the Human Resources Officer (HRO:2) position, GS-13, which required submission of two recent performance evaluations (PSRs) and a qualifications statement.

29.     Plaintiff was qualified for the position, having served in multiple **HR** assignments and having already performed many of the duties listed in the vacancy announcement while

stationed in ███████████ ASIA.

30.    Plaintiff satisfied all qualification requirements and submitted his PSRs within the timeframe permitted by the Office of Personnel Resources (OPR). The Agency's assertion that his PSR was late is factually incorrect. In fact, Plaintiff submitted one PSR because the Agency had not yet provided him his 2019 review. He later submitted the missing PSR as soon as it became available, but the Agency refused to consider it.

31.    Despite the technical omission, the Office of Personnel Resources and the panel chair decided to include Plaintiffs application in the review process - which was tainted by procedural irregularities and discriminatory bias. Scott M., who was later admonished and issued a Short of Tour (SoT) for his treatment of minorities, served on the selection panel despite a known history of racist and sexist conduct. Agency regulations required such officers to recuse themselves under ███████ AGENCY REGULATION, yet the Agency allowed his participation.

32.    The final selection panel, however, departed from established procedures by excluding Plaintiffs immediate supervisor, Antoine S., from the evaluation process, even though he was familiar with Plaintiffs performance. This exclusion, combined with Scott M.'s participation, skewed the process against Plaintiff.

33.    The panel chair and two members, Adrienne J. and S.S., concluded that Plaintiff lacked certain experience-such as "large Mission Center HR" exposure and documentation of "Special Issues" work-despite no objective evidence that the selected candidates possessed superior credentials.

34.    The panel ultimately ranked Alaina P. first, with Hugo A. as alternate. The Office of Personnel Management placed Alaina P. in a lower position and Hugo A., a non-Black candidate, was offered and accepted the position.

35.    The stated reasons for Plaintiffs non-selection-missing PSRs, alleged deficiencies in his qualifications statement, and insufficient "field documentation"-were pretextual and inconsistent with his proven record. The panel's claim that Plaintiff lacked "Special Issues" experience is also false. The vacancy required only the ability to exercise discretion in sensitive personnel matters, a skill Plaintiff demonstrated in his qualification statement and through prior HR assignments.

36.    Plaintiffs prior supervisor and colleagues knew him to be fully capable of performing the duties of the position. The Agency's own review documents show that he had previously handled sensitive personnel issues and HR operations across multiple regions. Peggy W. has admitted to working with Plaintiff on sensitive personnel issues.

37.    During the same period, Scott M., a senior HR official, made racially charged comments that revealed bias against African-American employees, including questioning Plaintifrs and his wife's absence from work "after the George Floyd murder" and stating to others that Plaintiff"was not a good HR officer." Scott M. was also aware that Plaintiff and his wife were not authorized to enter the ████████ OFFICE due to Covid-19 restrictions.

38.    These statements, coupled with the procedural irregularities in the selection process and the exclusion of Plaintiffs supervisor from the panel, demonstrate that race and color were motivating factors in the Agency's decision not to select him.

39.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff suffered loss of promotion opportunities, emotional distress, damage to professional reputation, and financial harm, including lost wages and benefits.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964,
### 42 U.S.C. § 2000e-16
(Retaliation: Denial of Acting Chief of HR Role)

8

40.    Plaintiff adopts and incorporates by reference all preceding paragraphs as though fully stated herein.

41.    On or about September 24, 2020, Plaintiff engaged in protected activity when he contacted the CIA's Office of Equal Employment Opportunity (OEEO) to repo11 concerns about discrimination in the HRO:2 selection process. Pursuant to Agency Regulation ███████, officers who enter the grievance process are protected from retaliation or retribution.

42.    That same day, Plaintiff filed an internal grievance alleging irregularities in the panel's evaluation process, which he believed were influenced by bias.

43.    On October 1, 2020, Plaintiff received EEO counseling materials and fom1ally entered the pre-complaint process. Shortly thereafter, on October 5, 2020, Scott M.-who was aware of Plaintiff's prior EEO activity and grievance-emailed colleagues proposing to import temporary HR staff to cover ███████ THE SITE in summer 2021, rather than allowing Plaintiff to serve as Acting Chief of HR, the customary rotation for the senior HR officer ███████. Multiple witnesses, including Amanda, Lynette, and Antoine S., confirmed Scott's retaliation and disparaging remarks following Plaintiff's protected activity.

44.    The email effectively denied Plaintiff the Acting Chief opportunity that would have can-ied higher responsibility and visibility.

45.    The timing of this decision, just days after Plaintiff initiated his EEO complaint, creates a clear inference of retaliation. In fact, before Plaintiff had filed his grievance, Scott M.'s PSR entries praised Plaintiff's performance. Afterward, he began characterizing Plaintiff as unqualified and unreliable, even referencing Plaintiff's absence "after the George Floyd murder" as evidence of poor performance. This sharp shift evidences retaliatory motive.

46.    The Agency later conceded that Plaintiff did, in fact, serve as Acting HR Chief after

9

the temporary appointee's departure-confirming that he was qualified and capable all along.

47.    Defendant's claimed justification-that the office needed "temporary assistance due to workload"-was pretextual, as no legitimate business reason prevented Plaintiff from serving in that capacity initially.

48.    Defendant's retaliatory conduct caused Plaintiff tangible harm, including lost pay differential, diminished career prospects, and emotional distress arising from being singled out and denied professional opportunities for asserting his civil rights.

49.    The retaliation was willful, knowing, and motivated by Plaintiffs protected activity, in violation of Title VIL

## COUNT III
### Violation of Title VII of the Civil Rights Act of 1964,
### 42 U.S.C. § 2000e-16
### (Pattern of Disparate Treatment and Retaliatory Animus)

50.    Plaintiff adopts and incorporates by reference all preceding paragraphs as though fully stated herein.

51.    Defendant's actions constitute part of a broader pattern of disparate treatment of Black employees within the CIA's human resources division, whereby qualified African American officers are subjected to heightened scrutiny, denied advancement, and retaliated against for pursuing EEO remedies.

52.    Plaintiffs experience mirrors this pattern: the same managers who excluded him from promotion later undermined his leadership opportunities following his protected activity.

53.    Scott M.'s history of racist conduct, his continued inclusion on hiring panels despite prior discipline, and the Agency's tolerance of procedural violations-including exclusion of diverse panelists, suppression of testimony, and manipulation of evaluation matrices-demonstrate a pattern of disparate treatment.

54. The Office of Personnel Resources' reversal of the panel's decision, coupled with Agency-wide reports and external findings of systemic discrimination, further evidences institutional bias. As noted in internal oversight communications and public reporting, the Agency has repeatedly concealed discrimination complaints under claims of national security. Plaintiffs experience exemplifies these systemic failings.

55. Defendant's ongoing practices have created a culture of retaliation that chills employees from reporting discrimination.

56. As a result of this ongoing discriminatory and retaliatory pattern, Plaintiff has suffered emotional distress, reputational harm, and financial losses, and continues to fear reprisal for his EEO participation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare Defendant's conduct a violation of Title VII of the Civil Rights Act of 1964;

B. Enter judgment in favor of Plaintiff for compensatory and equitable relief, including reinstatement or front pay;

C. Award Plaintiff damages for emotional distress, reputational harm, and related 1113unes;

D. Order Defendant to pay Plaintiffs attorneys' fees, costs, and expert fees;

E. Issue an injunction prohibiting further discrimination or retaliation; and

F. Grant any further relief the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

11

Date: October 24, 2025

Respectfully submitted,

_Isl Davhi A. Branch_
David A. Branch
D.C. Bar No. 438764
Law Office of David A. Branch &
Associates, PLLC
1120 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 785-2805
Fax: (202) 785-0289
davidbranch@dbranchlaw.com

12